Nicholas, J.
Tbe defendants in those two cases — some twenty-five of them in number — were indicted by a special grand jury, impanneled in July last, of the crime of murder in the first degree, a capital offense in this state. All are now confined in the county jail, and five of them, to-wit, Art Dover, Edward Woolard, Lewis Bolton, Clarence Mulligan and Frank Graef, have filed applications’ to be admitted to bail, under a claim of constitutional right or privilege, our Constitution providing (Section 9 of Ar- *396 tide I) that “All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident, or the presumption great.”
Before beginning an investigation of the proof, or of the presumptions arising therefrom, in the individual cases, let us inquire what principles of law must govern this inquiry.
Our Supreme Court has said, as early as the case of Summon v. State, reported in 19 Ohio, at page 139, that this is a question addressed to the sound legal discretion of the court.
And again, the same court, in the case of Kendell v. Tarbell, Judge, reported in the 24 Ohio State, at page 196, say:
“The indictment raises the presumption required by the Constitution to justify the refusal of bail.”
Now, referring back again to the case in the 19 Ohio, we find this language:
“A safe rule, where a malicious homicide is charged, is to refuse bail in all cases where a judge would sustain a capital conviction, if pronounced by a jury, on such evidence of guilt as was exhibited to him on the hearing of the application to admit to bail; and instances where the evidence for the state is of less efficacy, to admit to bail. So if the evidence exhibited on the hearing of the application to admit to bail be of so weak a character that it would not sustain a verdict of guilty against a motion for a new trial, the court will feel it their duty, under the Constitution, to adjudge the prisoner ‘bailable by sufficient sureties.’ ”
Guided by these authorities, which I understand speak the present law of this state on the subject, we learn:
1st. That this question is addressed to the sound, legal discretion of the court;
2d. That the fact of an indictment raises the presumption required by the Constitution to justify the refusal of bail, or in other words places the burden upon the defendant of showing that the proof is not evident, nor the presumption of his guilt great; and
3d. That the court must deny the application for bail unless he would set aside a conviction upon the showing made on this motion.
*397 With these principles of law in mind, let us examine the individual eases.
First, the case of Lewis Bolten: The application in this ease does not raise the constitutional question I have been discussing, but I will do it sua sponte, that he may have the advantage of it; but, before doing so, I will dispose of his motion as it is.
The grounds upon which he asks to be admitted to bail are six in number. The first is:
That he has been in jail for three months, and his case has not yet been set for trial. I have never seen, and counsel have not called my attention to, an authority recognizing this as a ground for bail in a capital case.
2d. That he was indicted at the April term of this court. Counsel will hardly urge this as a ground.
3d. That he is not guilty of the offense of -which he stands charged. This is not a question for the court, but must' be submitted to a jury.
4th. That there was not sufficient evidence before the grand jury to warrant their returning an indictment against him. Could this be a ground for admission to bail if it were true? In disposing of this question, I shall treat it as though it raised the constitutional question sought to be raised in the case.
' Thompson and Merriam, in their most excellent work on juries, at page 651, in treating of the relationship of the court and grand jury, say:
“In certain respects, the grand jury is to be regarded as enjoying a distinct automony. After they have been organized the larger part of their legitimate functions is to be performed by them as a separate and independent body acting by themselves' apart from the court; and in their deliberations and actions they are subject to no control or direction other than that which they may receive in the charge of the court before they proceed to enter upon their duties. The court neither keeps their consciences nor can compel them in finding facts. Within the sphere of their duties their power may properly be said to be omnipotent.”
And again, on page 365, these authors say:
“When the indictment has been duly returned, and the finding is endorsed, as required by law, these facts are considered as conclusive of the regularity of the .finding.”
*398 Our own Supreme Court, in Turk v. State, 7 Ohio, part 2d, page 240, say:
“Inquiry can not be made upon what ground any of the twelve jurors concurred in the finding.”
And as a grand juror is not permitted to impeach the finding of a grand jury, and no one else may invade the secrecy of that body, how could this court institute any such an inquiry as this branch of the motion would require? In the last above cited ease, at page 243, the court say:
"So far as the facts are concerned, the grand jury is an independent branch of the criminal tribunals of the country, and the court can not be permitted to substitute its own discretion or judgment for that of the grand jury upon the' sufficiency of testimony.”
While considering this question, we must not forget that grand juries may return indictments based wholly upon facts within their own knowledge, and to support which not a single witness has been called or sworn.
The taking of extended notes of the evidence produced before a grand jury is of recent origin, for it is but recently that a stenographer could be admitted to the grand jury room. Consequently, this question is a novel one, and it would be with great hesitancy that I would attempt to establish a precedent. I am not prepared to say that under no circumstances should a trial court look into the testimony taken by a grand jury, but I do feel prepared to say that, under the authorities which I have cited, in our state, I am not justified in looking into the .evidence in those cases to see if the grand jury was justified in returning the bills of indictment. If I can not, in the language of the 7th Ohio, quoted, inquire into what ground any of the twelve jurors concurred in finding the indictments, I certainly can not inquire into what ground all twelve .of them concurred. This same authority holds that the court can not substitute its discretion and judgment for that of the grand jury upon the sufficiency of the testimony. In passing upon the question of whether or not a bill of indictment shall be returned, it is the duty of the grand jury to so return if the guilt of the defendant is established beyond a reasonable doubt. The presumption of law is that the grand jury did its.duty; that is, obeyed *399 the instructions .of the court, and acted in conformity with their oath; and if they did so (and nothing appears in this record to the contrary) how can this court say that the proof is not evident or the presumption not great?
5th. That there is no reasonable probality of a trial of this ease at the present term of this court.
6th. That he offers bond in any reasonable amount.
If the defendant has no constitutional right to be admitted to bond, I hardly think counsel would insist upon substituting either or both of these grounds in its stead.
In support of this motion, he presents the record of the grand jury, and some sixteen affidavits, including his own. As to the record of the grand jury, I have said all that I care to upon this subject, and do not believe that multiplying words will make any clearer my position than I have already done.
These affidavits are all to the effect that this defendant was not with’ the crowd that hung Etherington, but was at his place of business some distance away. In other words, their tendency is to establish what is known in the law as the defense of an alibi. Assuming them to be true, do they establish this defense? The principle that whoever takes part in or incites others to acts of violence, under such circumstances as those of July 8th, is equally guilty with those who do the violent acts, is too fundamental or elementary to require citation or illustration. So that if this defendant incited others, either by words or deed, to commit this act, then it would not matter how far away he was from the scene of the trouble at the moment of its enactment. In most cases, the defense of alibi, though scrutinized with care by the courts, when established is a com píete defense; but not so in this class of cases. It is a w;ell established principle — and so far as this court has been able to learn it is universally recognized — -that whoever takes part in. a riotous assemblage, or incites others to do so, is responsible for any offense which is the natural or logical result of such misconduct. So that- this evidence does not in anywise negative the idea that this defendant did incite or aid in inciting this mob to the violence which resulted in Etherington’s death; and hence does not negative the conclusion that it was for this act that the grand jury charged him with this offense. .
*400 The defendant having failed, therefore, in overcoming the presumption raised by the finding of the indictment by the grand jury, this application is denied.
In the application of Dover, the constitutional question is squarely raised. In support of this application, the defendant offers the evidence taken before the grand jury; and his counsel, in his brief, says that there is evidence that just after supper on July 8t£, and a long time before the jail was broken into, this defendant said, “I am an Eagle; let’s get him.”
But he does not claim that the mob that afterwards took Etherington’s life was not at that time formed, and did not continue its activity from that time until the death of Etherington. If this were true, and the declaration that this defendant incited others to the acts of violence that resulted in Etherington’s death, can this court say that the proof is not evident or the presumption of his guilt not great ?
What I have said in reference to the grand jury record applies, of course, to this case as to the Bolton case. In this case, as in the Bolton case, the defendant fails to rebut the presumption raised by the finding of the indictment; and the application is, therefore, denied.
In the application of Edward Woolard, the defendant raises the constitutional question also, and offers the record before the grand jury, and the affidavits of himself and six others. By these affidavits, he seeks to show that although in the jail at the time that Etherington was taken from his cell, he took no part in doing so, but did protect an officer of the law who was then protecting the prisoner. This is a defense for the consideration of the jury, but does not rebut the presumption already referred to, and this application is denied.
In the application of Clarence Mulligan, the constitutional question will be considered, though not formally presented. He offers the grand jury record and five affidavits, including his own. These affidavits are to the effect that he was at the saloon of the deceased, Howard, at the time it is claimed that Etherington lost his life; and the defendant adds: That he did not aid in that offense in any way. This is a question for the jury, and not for the court, and this application will be denied for the reasons already stated.